## Mary Croissant v. Fred T. Beers, Executor, etc.

### Gen. No. 4,472.

1. MASTER'S REPORT—*when court will treat exceptions as filed to.* Notwithstanding exceptions do not appear to have been filed to the master's report, the court will on appeal treat the same as having been filed where the decree recites that the case was heard upon exceptions to the report. (See Beck v. Stoddard, *ante*, p. 370.)

2. PARENT AND CHILD—*when conveyance from former to latter will not be sustained.* Where an aged and infirm parent conveys substantially all his property to a child without consideration and without any contract to support, it is for the child to show that the conveyance was fair and reasonable, and if it was not, it will not be sustained.

Bill of interpleader. Appeal from the Circuit Court of Bureau County; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed March 8, 1905.

W. A. PANNECK, for appellant.

FRED T. BEERS, *pro se.*

MR. JUSTICE DIBELL delivered the opinion of the court.

John Croissant filed a bill of interpleader against Jacob Croissant, Sr., and Mary Croissant, asking that defendants be required to interplead concerning the ownership of a note for the principal sum of $2,500 which he had formerly given to Jacob Croissant, Sr., and upon which he had paid $500 of principal, reducing the principal to $2,000, which note was secured by a real estate mortgage, and which indebtedness he was ready to pay, but was unable safely to do so, because both Jacob Croissant, Sr., and Mary Croissant claimed to be the owner of said indebtedness. An order was entered requiring said parties to interplead. The answer of Jacob Croissant, Sr., set up that he made the loan, and the note and mortgage were given to and payable to him, and that he received $500 on the principal; that for some two years he had been making his home with his son, Jacob Croissant, Jr., and Mary, his wife, and had these securities locked up in a desk in the room occupied by him,

but in his absence one day some one broke open the desk, and took away these and other securities; that some little time afterwards, a notary was brought to the house, and complainant was urged and required to sign a paper which was in fact an assignment of the mortgage, and was told that if he did not do so, Gottfried Deutermann, the husband of his granddaughter, would get all his property, and that he was finally persuaded into signing the paper, without knowing what its contents were; that he received no consideration for the assignment of the note and mortgage, and did not intentionally give them to Mary, his daughter-in-law. Mary Croissant answered, setting up that Jacob Croissant, Sr., assigned and transferred the note and mortgage to her for a valuable consideration, and that she was the owner thereof. The cause was referred to a master, with directions to take and report the proofs, with his conclusions of law and fact. The master reported that Jacob Croissant, Sr., was the equitable owner of the note and mortgage and was entitled to a decree for the possession of the same, or the avails thereof; and the master stated the amount due, as John Croissant had deposited in court a part but not all of the mortgage debt. Before the coming in of this report, John Croissant, the complainant, had died, and his administratrix filed objections before the master, one of which the master sustained, and thereby reduced his computation of the amount to be paid in satisfaction of the note and mortgage. Mary Croissant filed objections before the master, which the master overruled, and the master filed his report in court. It does not distinctly appear, from anything we are able to find in the record, that Mary Croissant filed exceptions in court to the master's report, and it is strongly insisted that she did not, and that for that reason there is nothing before the court. The decree, however, recites that the case was heard upon exceptions to the master's report, and we treat the cause as if sufficient exceptions were filed. The court overruled the exceptions, and entered a decree for Jacob Croissant, Sr., and Mary Croissant prosecutes this appeal. Thereafter

Jacob Croissant, Sr. died and his executor was substituted as appellee in this court.

At the time of this difficulty, Jacob Croissant, Sr., was about eighty-eight years of age, and in feeble health. A few years before, he was worth some $25,000 or $30,000. He distributed the bulk of this among the natural objects of his bounty. His son, Jacob Croissant, Jr. had been twice married, and by his first marriage had a daughter, Herminia Deutermann, who lived in Bureau county, and for eight years prior to 1899 Jacob Croissant, Sr. had lived with this granddaughter. He had a difficulty with her husband, and in 1899 came to live with his son, Jacob, in Peru, LaSalle county, in a building which he, Jacob Croissant, Sr., owned, but had permitted his son Jacob to occupy, without rent, for about eighteen years. There was a saloon down stairs, and the family lived above. Jacob Croissant, Sr., then deeded this property to his son's second wife, Mary, the appellant here. In 1901, the total possessions of Jacob Croissant, Sr., consisted of a $3,500 mortgage on property in Iowa, the $2,000 remaining unpaid on the John Croissant mortgage involved in this suit, and some $700 in bank, although it is not clear whether this money was in bank in his own name or in the name of his son Jacob or of his daughter-in-law, Mary. He testified that in 1901 in his absence from home one day, some one broke open his desk, which was locked, and extracted these two mortgages and the accompanying notes, and that a few days later he was urged and induced to sign papers which turned out to be an assignment of these mortgage securities to his daughter-in-law, Mary, and that his signature to the papers, the purport of which he did not understand, was obtained by insisting to him that if he did not sign them, Deutermann, his granddaughter's husband, would get all his property. Thereafter, Mary Croissant collected the $3,500 Iowa mortgage, and that matter is not in controversy here. But Jacob Croissant, Sr., insisted that he was entitled to have back the remaining securities for $2,000 given by John Croissant. Mary Croissant denied having

broken into her father-in-law's desk and having abstracted these securities therefrom. She testified that he gave them to her in the presence of the notary public, who prepared the assignments, and took the acknowledgments of Jacob Croissant, Sr., thereto. The notary testified that the old gentleman certainly understood what he was doing. Very shortly after the transfer of these securities Jacob Croissant Sr., returned to the home of his granddaughter, Mrs. Deutermann, where he remained up to the time the testimony in this case was taken. He was corroborated as to the fact that his desk showed signs of having been broken open. He testified positively that there was no consideration for this assignment, and Mary Croissant did not testify that there was any consideration therefor, but testified that it was a free and voluntary and unsolicited gift by him to her.

We deem it unnecessary to determine where the preponderence of the evidence is upon the question whether these securities were taken from his desk by force, and whether the assignment was obtained by playing upon his fears, or whether he did voluntarily turn over these papers to his daughter-in-law. It is clear that, aside from this $2,000 mortgage, she and her husband had been large recipients of his bounty, and that by these assignments he stripped himself of substantially all of his property in his old age; that he was feeble in mind and body, and that it was a very unwise transaction for him. Mary Croissant does not even testify that she agreed to support him the rest of his life, or to give him room in the house which she had derived from his bounty. She testified to no consideration whatever, but alleged that it was simply a voluntary gift. We hold the law to be that where an aged and infirm parent conveys substantially all his property to a child, without consideration, and without any contract to support, it is for the child to show that the conveyance was fair and reasonable, and if it was not, it will not be sustained. This assignment was to one who stood in a relation of trust and confidence to Jacob Croissant, Sr., and who ought, in his old age, to have protected him from an unwise and injudi-

cious gift of all his remaining property. Again, Mary pleaded an assignment of the note and mortgage to her for a valuable consideration. She made no proof of a consideration, but testified it was a voluntary gift to her. A party whose *allegata* and *probata* do not agree is not entitled to a decree. We are of the opinion that the Circuit Court properly set aside the transfer.

The decree is affirmed.

*Affirmed.*